In the Matter of Zondel KATZ, etc., Bankrupt.

GULF NATIONAL BANK, Appellant,

v.

Paul M. FRANKE, Jr., Appellee.

No. 77–1708
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1977.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Henry F. Laird, Jr., Gulfport, Miss., for appellant.

Richard P. Salloum, Gulfport, Miss., for appellee.

1. The partnership name had apparently been derived by combining the first name of the bankrupt with the surname of his partner, Theodore Gardner. On September 12, 1974, Mr. Gardner voluntarily entered his appearance in the bankruptcy.

2. A recent amendment to the Mississippi UCC will resolve the difficulty presented in this case for the future. The new § 75–9–402(7) provides:

Before GOLDBERG, CLARK and FAY, Circuit Judges.

PER CURIAM:

On July 31, 1974, Zondel Katz, an individual, filed a voluntary petition in bankruptcy, styled "Zondel Katz d/b/a Zondel Gardner, a General Partnership." [1] Gulf National Bank (Bank), claiming to. be a secured creditor, filed a reclamation petition in which it asserted a right to the bankrupt's inventory as well as to any of the bankrupt's accounts. The bankruptcy judge denied the petition and the district court affirmed.

The Trustee's first, and most general contention, is that under Mississippi law a Uniform Commercial Code (UCC) financing statement which names a partnership as the debtor is insufficient to create a perfected security interest. In particular, the issue is whether the financing statement complied with § 9–402(1) of the UCC (Mississippi Code Ann. § 75–9–402(1) (1972)), which reads:

> A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.[2]

The issue arises because the financing statement was signed "ZONDEL GARDNER, by Zondel Katz, Partner." In the space labeled "Debtor" the Bank entered "ZONDEL GARDNER, A PARTNERSHIP." The Trustee argues that such a financing statement is so misleading that it cannot create a perfected security interest.

> A financing statement sufficiently shows the name of the debtor if it gives the individual, *partnership* or corporate name of the debtor, whether or not it adds other trade names or the names of the parties.

Advance Sheet General Acts, No. 8 (1977) (emphasis added). Mississippi has also adopted the Uniform Partnership Law. Miss.Code Ann. §§ 79–12–1 *et seq.* (Supp.1977).

The Trustee's premise is that anyone looking for a security interest filed against Zondel Katz would look under the letter "K" in the appropriate files and find nothing because this statement was filed under the letter "Z." Thus, the Trustee would require creditors of partnerships to file financing statements under the name of each partner. To buttress his argument, the Trustee points to Mississippi cases which hold that a partnership is not a separate legal entity.[3]

 Assuming that was the law in Mississippi for most purposes, it was changed for purposes of this case by Mississippi's adoption of the UCC. Under the UCC, a partnership is a legal entity. *See Loucks v. Albuquerque National Bank,* 76 N.M. 735, 418 P.2d 191, 196 (1966). Moreover, under the UCC a partnership may be a debtor. Section 9–105(1)(d) defines a debtor as "the person who owes payment or other performance of the obligation secured." Section 1–201(30) defines "person" to include "an individual or an organization." And § 1–201(28) defines "organization" to include a partnership. *See In re Lockwood,* 16 UCC Reporting Service 195, 203–04 (D.Conn.1974); *In re Humphrey,* 12 UCC Reporting Service 986, 989 (E.D.Tenn. 1973); *In re Holmes,* 9 UCC Reporting Service 1160, 1162 (W.D.Mich.1971); *In re Uptown Variety,* 6 UCC Reporting Service 221, 227 (D.Ore.1969). Since a partnership may be a debtor under the UCC, and since Katz signed the financing statement in his capacity as a partner, the Bank fulfilled the requisites of § 9–402 when it filed the financing statements.

The cases that the Trustee cites in support of his position are all cases involving a trade name. In those cases an entity had chosen to operate under another name. But only the original entity is the true debtor. Thus, courts have held that filing under a fictitious or trade name rather than under the actual name of the debtor may be misleading to other creditors who might search the records. In the case of a partnership, however, the UCC permits the partnership to establish its status as a separate entity and to create debts of its own. To require filing as to those debts other than under the name of the partnership would be misleading since subsequent creditors of the partnership could not discover claims against the assets of the partnership. Furthermore, to require creditors of partnerships to file financing statements under the names of each partner would overly burden the filing system. *See In re Lockwood, supra; In re Humphrey, supra.*

The Bank complied with § 9–402(1) in recording the name of the debtor. Since the Bank also listed accounts as one type of collateral, its security interest in the bankrupt's accounts was perfected.

 The Bank, however, also claims a security interest in the bankrupt's inventory.[4] The second issue before this court then is whether the description of the collateral in the financing statement was sufficient to perfect a security interest in the inventory.[5] Section 9–402(1) provides that the financing statement is sufficient if it "contains a statement indicating the types, or describing the items, of collateral." In the financing statement filed by the Bank the collateral covered was described as "all accounts and contracts owned by the Debtor or arising from the sale of inventory or performance." On the security agreement itself the Bank had checked the appropriate boxes to acquire a security interest in inventory as well as contract rights and accounts. Nevertheless, the Bank could perfect a security interest only in those types of collateral listed on the financing statement. *See In re Levine,* 6 UCC Reporting Service 238,

---

**3.** *E. g., Scott Company of California v. Enco Construction Co.,* 264 So.2d 409, 411 (Miss. 1972).

**4.** By stipulation the parties have agreed to sell the inventory. Our conclusion is intended to affect only the disposition of the proceeds from that sale.

**5.** Because the district judge agreed with the first contention of the Trustee, he did not reach the issue of adequacy of description of the collateral. This presents solely a question of law as to which fact determinations are not prerequisite.

240–41, 244 (D.Conn.1969). Neither "accounts" nor "contracts" (or "contract rights" in UCC terminology) includes inventory. Section 9–106 of the UCC defines "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." The same section of the UCC defined "contract right" as "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." [6] That neither term includes inventory is apparent from the inclusion of inventory within the general category of "goods" in § 9–109. "Goods" is defined in § 9–105(1)(f) as including "all things which are movable at the time the security interest attaches or which are fixtures" and excluding "accounts . . . contract rights and other things in action." In short, inventory is tangible collateral while accounts are intangible. *See* UCC § 9–105, Official Comment 3. Thus, when the Bank listed the types of collateral on the financing statement, it did not include inventory. A subsequent potential secured party who looked at the financing statement could reasonably have concluded that the Bank was financing accounts receivable and that the inventory was unencumbered. The financing statement would not have alerted him to the need for additional inquiry. The Bank's security interest in inventory was therefore unperfected.

AFFIRMED IN PART and IN PART REVERSED.

---

**6.** By adopting the 1972 amendments to the UCC, Mississippi has eliminated the term "contract right." The single term "account" is now used instead. *See* § 75–9–106, Advance Sheet General Acts, No. 8 (1977).

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.